## LICENSE REVOKED OF PHYSICIAN PRACTICING UNDER TWO NAMES.

Common Pleas Court of Franklin County.

E. J. ROSE v. H. H. BAXTER ET AL.

Decided, May 16, 1908.

*Physician—Revocation of License of—Authority of State Board of Examiners—Not Clothed with Administrative Functions—Gross Immorality not an Indefinite Term—Section 4403c.*

1. The expression "gross immorality" has acquired through long use a standard of interpretation and understanding that prevents its being longer subject to the charge of being indefinite, and the provisions of the act establishing a state board of medical examiners which authorizes the board to revoke a certificate for gross immorality is, therefore, not void for want of definiteness, or because the question of what constitutes gross immorality is left to the caprice of individual members of the board.

2. A physician who maintains two different offices under two different names and under circumstances which indicate an intention to perpetuate a fraud upon the public in his professional character is guilty of gross immorality within the meaning of the act in question, and an injunction against the revocation of his license will not lie.

*Foran, Pearson & Powell* and *Thomas E. Powell,* for plaintiff.
*Wade H. Ellis,* Attorney-General, *Smith W. Bennett* and *Clarence D. Laylin,* contra.

DILLON, J.

Certain of the grounds alleged and argued in favor of the plaintiff's case may be very quickly disposed of.  Allegations in the petition to the effect that the defendants intend to revoke by a false interpretation of the law; that the members of the board have a prejudice against the plaintiff; and that a minority of the board may proceed to attempt to exercise the functions of the board; and further that one member of the board of appeal, to-wit, the Attorney-General, is prejudiced, are neither sufficient as a matter of fact nor sufficient as a matter of law to warrant a court in granting an injunction.

So far as the law is concerned, it is very questionable and indeed without precedent, as far as I know, that such allegations will be permitted to interfere with the exercise of the functions of the board.  Further, as a matter of law, these allegations are made in the petition upon information and belief, even though sworn to positively in the affidavit.

But aside from the legal phase of the question, the facts in the case are overwhelmingly against the plaintiff's allegations on this point, and nothing need further be said on it.

The allegation is further made that the board has no authority to revoke or hear the case, because the plaintiff was a practicing physician prior to July 1, 1900.  On this point, the contention of the Attorney-General in his brief is correct, and I think the argument is unanswerable, that the plaintiff has no such rights to be exempted from the operation of the original statute and amendment thereto, and the act, therefore, can not be and is not retroactive or *ex-post facto*.

The allegation in the petition is made that the act does not provide for a trial, but this is not insisted upon, and it clearly appears from the act that a trial is provided for, and this is what the board was proceeding to give when the temporary order was granted.

The allegation that there is no appeal or hearing in a court of law is not pressed in argument, and it must be apparent from the cases that no such right exists to a person exercising a privilege or license under the power of the state acting through its Legislature.

The question which I deem most serious in this case and which, I believe, appeals to counsel on both sides as being the real question of the case, arises from the consideration of that portion of 4403c, which authorizes the board to revoke after notice and hearing, a certificate where the physician has been guilty at any time of felony or of gross immorality, etc.

That the defendant board can not exercise what has sometimes been carelessly termed administrative functions seems conceded. That is to say, that the legislative power has been vested in one body, and this board can only carry into effect that which the Legislature itself has seen fit to order and direct. If the expression of "gross immorality" is so vague, so uncertain, so broad and comprehensive, that it gives to the board the sole power to determine whether or not a physician's certificate or license shall be revoked, and if it furnishes no standard as to qualification, but leaves the matter solely to the opinion of the board as it may be constituted, then the plaintiff's contention must prevail, and that part of the act which provides for the revocation of a certificate for gross immorality be held to be void.

This theory of the law has been upheld in numerous cases and obtains strong sanction in our own state in the case of *Harmon* v. *State,* 66 O. S., 249. In that case, the opinion of which is brief, the court holds that the act of March 1, 1900, with reference to engineer's licenses, was unconstitutional and void, because the power was given to the district examiner to grant a license if upon examination the applicant was found "trustworthy and competent."

Plaintiff's contention has been furthermore upheld in a number of states, and he is not without authority to sustain his argument. The courts of last resort in California, Arkansas, Kentucky, and also the Court of Appeals of the District of Columbia, have all held in substance that the use of a general term which vests in a board the duty of carrying out legislation, while it is a proper exercise of police power, yet the acts or conduct which are made the ground of forfeiture must be declared with certainty and definiteness; and hold, following this general state-

ment with which all courts agree, that such general statements as "gross immorality" are not sufficiently certain and definite but leaves the question to the caprice of each individual member of the different boards from time to time.

On the other hand, however, we find a majority of the authorities taking the view that this language is not so indefinite and uncertain as to fall within the ban. Certain expressions have been handed down to us through the law for centuries and, it would seem, have received such standard of interpretation and understanding that they no longer are subject to the charge of being indefinite. Thus, with reference to such expressions as "gross neglect of duty," found in our divorce laws, or, to put a case more nearly akin to the present one, the ground for which attorneys may be disbarred by the state, to-wit, "unprofessional conduct, involving moral turpitude." The impossibility is apparent of anticipating and naming in detail each and every specific act which would constitute gross immorality or which would constitute moral turpitude.

To hold, therefore, that gross immorality was so indefinite that the board could not carry out the legislative act and intent without resorting to uncertainty and caprice would probably involve a number of other well settled laws. Gross immorality is a term which has been used and has received adjudication at the hands of a great many courts. The word "gross" does not mean great, or big, or excessive, necessarily, but rather such a willful, flagrant and shameful quality with respect to the office involved as renders the officer unfit to hold his license and authority to act. Sometimes the expression is found, under the law, "gross misbehavior." The expression "moral turpitude" is closely akin to the expression at bar and has received a great many interpretations, but has always been sustained by the courts so far as I have been able to ascertain, and I find no cases in which it has been held so indefinite as to preclude action against a person guilty thereof. The opinion in the case of *Meffert* v. *Board of Medical Registration of Kansas,* which is reported in 66 Kansas, 710, and the authorities there quoted, is, it seems to be, an answer to the claims of the plaintiff here

both as to the question of the act being *ex-post facto* and as to its being in violation of the plaintiff's constitutional rights.

As to the charge itself, while it may be conceded that a physician might for some purposes and under some circumstances assume two names, yet there can be but one rational and natural meaning given to the charges made in this case. The charges are made against the plaintiff as a physician in his *quasi* public character as such. Secondly, it charges that he maintained a physician's office under the name of Doctor Justin and at the same time maintained an office under the name of Dr. E. J. Rose, "intending thereby to perpetrate a fraud upon the public." This charge I think is sufficiently definite, and charges as a matter of fact an act which, with reference to his profession and the law governing the same, constitutes gross immorality.

An entry may be drawn dissolving the temporary restraining order heretofore granted and making a final judgment in favor of the defendants and dismissing the plaintiff's petition at his costs. The appeal bond will be fixed at $200.